UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


RONALD  RAY  HIGHSMITH          )
                                )
v.                              )          NO. 2:04-CV-17
                                )          NO. 2:00-CR-12
UNITED STATES OF AMERICA        )
                                )


## <u>MEMORANDUM  OPINION</u>

Ronald Ray Highsmith ("petitioner" or "Highsmith"), a federal

prisoner, [1] has filed this *pro se* motion to vacate, set aside, or correct his sentence

pursuant to 28 U.S.C. § 2255, along with a supporting memorandum. [Doc.1].  The

United States has responded in opposition to the motion [Doc. 6] and the petitioner

has replied to the government's response. [Doc. 11].  Highsmith later filed a

"Supplemental Brief" in this matter.  [Doc. 12].  The matter is now ripe for

disposition.  The Court has determined that the files and records of the case

conclusively establish that the petitioner is not entitled to relief under § 2255 and,

therefore, no evidentiary hearing is necessary.  For the reasons which follow, the

---

[1]  Highsmith was incarcerated at the time of the filing of his motion on January 16, 2004.  His
motion was assigned to Senior United States District Judge Thomas G. Hull and was reassigned to J.
Ronnie Greer, United States District Judge, upon Judge Hull's retirement on April 26, 2006.  According
to the Bureau of Prisons, Highsmith was released from custody on March 22, 2005, while his motion was
pending in this Court.  Highsmith satisfies the "in custody" requirement of 28 U.S.C. § 2255 since his
motion was filed while he was still incarcerated.  *Hampton v. United States*, 191 F. 3d 695 (6th Cir. 1999).

petitioner's motion pursuant to § 2255 lacks merit and will be DENIED.

I.    **Procedural Background**

On January 26, 2000, a two count indictment was returned by the federal grand jury charging the defendant with manufacturing marijuana and being a felon in possession of a firearm.  On August 22, 2000, a four count superseding indictment was returned charging Highsmith with manufacturing at least 100 marijuana plants, possessing with the intent to distribute 100 marijuana plants, possession of marijuana with the intent to distribute and being a felon in possession of a firearm.  On November 20, 2000, the defendant pleaded guilty, pursuant to a plea agreement with the government, to Counts 1 and 4 of the indictment, which charged the defendant with manufacturing at least 100 marijuana plants in violation of 21 U.S.C. § 841(a)(1)  and with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).  Pursuant to the terms of the  plea agreement, Counts 2 and 3 of the indictment were dismissed at sentencing.

On June 18, 2001, Highsmith was sentenced to a 60 month term of imprisonment as to Count 1 and to 30 months imprisonment as Count 4, to run concurrently, for a net effective sentence of 60 months.  Judgment was entered on July 5, 2001.  Highsmith  appealed to the Sixth Circuit Court of Appeals and the judgment was affirmed on January 16, 2003.  Petitioner then timely filed the

present motion.

II. **Standard of Review**

This Court must vacate and set aside the sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255   Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief.  If it plainly appears the movant is not entitled to relief, the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief.  *Green v. Wingo*, 454 F. 2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F. 2d 733, 735 (6th Cir. 1961).  "Conclusions, not substantiated by allegations of fact with some probability of verity,  are not sufficient to warrant a hearing."  *O'Malley*, 285 F. 2d at 735 (citations omitted).  A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit.  *Loum v. Underwood*, 262 F. 2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas*, 29 F. 3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.) , *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error requires a showing of a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of

counsel. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687, 104 S. Ct. at 2064.

As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F. 2d 1073, 1081 (3rd Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690, 104 S. Ct. at 2066. The evaluation of the

objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S. Ct. 2574, 2586, 91 L. Ed. 2d 305 (1986).

The second prong of the *Strickland* test requires the petitioner show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S. Ct. at 2068. The *Strickland* court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that court should be followed. Courts should strive to ensure that ineffectiveness claims

not become so burdensome to defense counsel that the
entire criminal justice system suffers as a result.

*Id.* at 697, 104 S. Ct. at 2069.

III.   **Factual Background**

At the time of his guilty plea, Highsmith  stipulated to the following

facts, taken from the agreed factual basis filed in this case:

On August 4, 1999, a Hawkins County Marijuana  Eradication

Helicopter was working on a routine marijuana eradication operation when the

pilot observed a patch of marijuana located near the Hawkins and Hancock county

lines.  The ground crew located several marijuana plants growing in the area

around defendant Highsmith's residence, secured the area, and obtained a state

search warrant.

During execution of the search warrant at defendant's residence,

agents found several mason jars full of marijuana, three paper bags that contained

stems and leaves, a trash bag full of stems, marijuana sifting screens, scales and

other assorted paraphernalia.  A .38 revolver was found in the kitchen cabinet and a

shotgun and rifle were found in the livingroom.  Agents also found another rifle

and pistol inside the residence.  Defendant Highsmith, having previously been

convicted of a crime punishable by imprisonment for a term exceeding one year,

knowingly possessed the firearms in commerce and affecting commerce.

Agents searching the property discovered 35 separate areas where 115 marijuana plants were growing in pots or planted in the ground. Most of the marijuana plants were scattered around the property in close proximity to the house. Twenty-five marijuana plants growing in pots were located in a fenced in area where agents also found a bag of miracle grow. These plants had just been watered.

IV. **Analysis**

In his § 2255 motion, petitioner asserts claims of ineffective assistance of counsel for failure to obtain discovery or do an adequate pretrial investigation concerning 1) the actual number of marijuana plants manufactured by the defendant, 2) defendant's "possession" of a firearm as it relates to the enhancement of defendant's guidelines sentencing range under USSG § 2.D1.1(b)(1) for possessing a dangerous weapon; and 3) defendant's possession of a firearm as it relates to application to the defendant of the safety valve provisions of 18 U.S.C. § 3553(f); USSG § 5C1.2(a)(2).

**The number of marijuana plants**

Highsmith pleaded guilty on November 20, 2002, to Count 1 of the indictment in this case charging him with manufacturing at least 100 marijuana plants in violation of 21 U.S.C. § 841(a)(1). Because his conviction involved at

least 100 marijuana plants, Highsmith was exposed to a term of imprisonment of a minimum mandatory five years up to 40 years.  At the time of the entry of his guilty plea, Highsmith stipulated that the number of marijuana plants growing on his property at the time agents searched his property was 115 "growing in pots or planted in the ground."

Highsmith now, however, alleges that he told his attorneys that by his accounting, the number of plants he "could have" had was only around 50. Pointing to documents he says he subsequently obtained from the drug task force, Highsmith argues that the drug task force mapped out the location of 100 plants, not the 115 referenced in his presentence report, a rather sizable discrepancy according to Highsmith.  Highsmith argues that the discrepancy about the number of plants should have caused his attorneys to seek further discovery on the issue. [2] Highsmith suggests only that review of the video tape of the counting of the plants by agents <u>might</u>  have established that he was growing fewer than 100 marijuana plants.

Petitioner's argument is without merit.  Highsmith has not identified

---

[2]  It is unclear to the Court whether Highsmith is arguing that his attorneys never received Rule 16 discovery from the government or whether he insists they should have sought "further" discovery. The Court notes that the Magistrate Judge ordered discovery pursuant to Rule 16 on June 8, 2000 [Doc. 5] and that thereafter Highsmith's attorneys filed on his behalf several motions, including a motion to suppress certain statements made to law enforcement.  This suggests to the Court that defendant's attorneys received the discovery ordered by the Magistrate Judge from the government.

any evidence establishing the number of marijuana plants at fewer than 100, arguing only that other evidence might have established a different number.  Such an assertion, especially in the face of his signed stipulation that the number of marijuana plants was 115 and his acknowledgment under oath of his agreement with the stipulation at his change of plea hearing, falls short of establishing ineffective assistance of counsel.

One other point is worth noting.  As the government points out, the government had previously filed an information pursuant to 21 U.S.C. § 851 alleging Highsmith's prior felony conviction for cultivating marijuana.  With a prior drug felony conviction, Highsmith would have been subjected to a mandatory minimum ten year sentence under 21 U.S.C. § 841(b)(1)(B).  Given that the United States agreed to ignore Highsmith's prior conviction as part of the plea agreement, it is entirely reasonable that his attorneys would have recommended that he "jump" at the chance to plead guilty to an offense which subjected him only to a five year mandatory minimum, even if there was some question about whether the government could prove  manufacture of at least 100 marijuana plants.  Highsmith himself acknowledges that it was not unreasonable for his attorneys to recommend that he accept the plea agreement offered by the government.

**The firearm enhancement**

During the execution of the search warrant at Highsmith's residence, agents found a .38 revolver in a kitchen cabinet and a shotgun and rifle in the livingroom of Highsmith's house. Another rifle and a pistol were found elsewhere in the house. At the sentencing hearing, one of the agents who had searched Highsmith's house testified that he found the .38 revolver in the kitchen cabinet near a wooden plate that held some marijuana. The agreed factual basis also establishes that agents found several Mason jars full of marijuana, three paper bags that contained stems and leaves, a trash bag full of stems, marijuana sifting screens, scales and other assorted paraphernalia. Highsmith testified that he bought the .38 at a flea market for his wife because threatening people had come on their property, that he had never brandished the firearm nor used it to protect his marijuana crop. The presentence report indicated that all the firearms except the .38 revolver were unloaded.

In determining Highsmith's guideline sentencing range, the Court applied the two level enhancement of USSG § 2D1.1(b)(1) for possession of a dangerous weapon. Enhancement analysis under § 2D1.1(b)(1) has two parts. *United States v. Solorio*, 337 F. 3d 580, 599 (6th Cir. 2003). First, the government bears the burden of showing by a preponderance of the evidence that the defendant actually or constructively possessed the weapon. *United States v. Darwich*, 337 F.

3d 645, 665 (6th Cir. 2003); *Solorio*, 337 F. 3d at 599. "Constructive possession of an item is the ownership, or dominion or control over the item itself, or dominion over the premises where the item is located." *Darwich*, 337 F. 3d at 665. Second, once the government meets its burden of showing that the defendant possessed a weapon, a presumption arises that the weapon was connected to the offense. *Id.* The burden then shifts to the defendant to demonstrate that "it was clearly improbable that the weapon was connected with the crime."

Highsmith objected to the § 2D1.1(b)(1) enhancement for the .38 revolver in the trial court. He did not contest that the government had established that he had possessed the firearm either in the trial court or on his direct appeal, and he does not contest that part of the enhancement analysis now. He did object, on direct appeal, however, to the finding of Judge Hull that he could not conclude that is was clearly improbable that the gun was connected with the marijuana offense. Judge Hull's memorandum opinion and order held that "because of the proximity of the gun to some of the drugs that were in the house, Mr. Highsmith cannot show that it was clearly improbable that the weapon was connected with the drug trafficking offense." [Doc. 44]. The Sixth Circuit affirmed Judge Hull's finding. *United States v. Highsmith*, 60 Fed. Appx. 517 (6th Cir. 2003).

Highsmith now claims ineffective assistance of counsel for counsel's

alleged failure to discover items of evidence in the possession of the drug task force which purportedly show the .38 revolver to be unloaded and seized with six empty shells.  Additionally, he argues, there was no ammunition seized that would match the .38 revolver.  He argues that the district court would never have applied the sentencing enhancement had the court been aware of the fact that the gun was unloaded with no supply of ammunition in the residence.

Because the record establishes that Judge Hull was reluctant to apply the § 2D1.1(b)(1) enhancement for the revolver, this allegation is more troubling than the first raised by Highsmith.  Although arguably the .38 revolver was not loaded or ready to be fired when seized from Highsmith's residence, this Court cannot conclude, however,  that the enhancement would not have been applied by the sentencing court had these facts been disclosed, since it is clear from Judge Hull's order that the overriding factor in his determination was the proximity of the firearm to the drugs located in petitioner's house.  Even if petitioner can show that counsel's performance was deficient, he cannot meet the second prong of the *Strickland* test, *i.e.*  that the deficient performance by his attorneys prejudiced the defense.

Several factors are relevant to the determination of whether a weapon was connected to the offense, although none is completely controlling:

(1)  the type of firearm involved;  (2) the accessibility of the weapon to the defendant;  (3) the presence of ammunition;  (4)  the proximity of the weapon to illicit drugs, proceeds, or paraphernalia;  (5) the defendant's evidence concerning the use of the weapon;  and (6) whether the defendant was actually engaged in drug trafficking, rather than mere manufacturing or possession.  *United States v. Moses*, 289 F. 3d 847, 850 (6th Cir. 2002).   Highsmith now argues that because the revolver was unloaded and because he offered a plausible alternative for the existence of the weapon,  *i.e*., that it was purchased for his wife's protection from threatening individuals unrelated to any drug trafficking, a fact found credible by Judge Hull, the result would have been different.  His argument appears to be simply that because the firearm was unloaded it is not, therefore, a type of firearm typically used in drug trafficking, a factor which, when coupled with his alternative plausible explanation for the possession of the weapon, would have caused a different result.

The petitioner's argument is flawed for several reasons.  Highsmith bears the burden of showing clearly that the weapon recovered was unconnected with the offense.  His admission of ownership of the gun, along with the fact that the gun was found lying near the drugs (whether loaded or unloaded) were more than sufficient to connect the gun to the underlying offense.  *See United States v.*

14

*Bowden*, 380 F. 3d 266 (6th Cir. 2004). In the Sixth Circuit, overcoming the presumption of connection is difficult and the Sixth Circuit will only find that an appellant has shown that it is clearly improbable that a weapon was connected with a drug offense if the nature of the weapon found or the circumstances in which it was found makes it extremely unlikely that the gun had anything to do with the drug offense. *See United States v. Chalkias*, 971 F. 2d 1206, 1216 (6th Cir. 1992); *United States v. Garner*, 940 F. 2d 172, 176 (6th Cir. 1991). Even viewing the evidence favorably to Highsmith, the record in this case establishes that the unloaded .38 revolver is in fact a type of firearm involved in drug offenses, the weapon was clearly accessible to the defendant, the weapon was in close proximity to illicit drugs and drug paraphernalia and, even if the defendant's explanation for possession of the firearm is plausible, which Judge Hull found it to be, it is also possible for the weapon to have had a dual purpose. There is evidence in this case that the defendant was engaged not just in the manufacture of marijuana but also in drug trafficking as evidenced by the large quantity of plants found as well as the large quantity of stems located in a trash bag and the presence of a marijuana sifting screen and scales. And, as the government points out, it is clear that the revolver, even if unloaded at the time of its seizure, had been fired sometime in the recent past. Not only that, even an unloaded pistol can be used to intimidate or to

protect a drug trafficking operation. [3]

Highsmith simply cannot meet his burden of establishing the second prong of the *Strickland* test. Even accepting, as Highsmith urges, that Judge Hull <u>might</u> have ruled differently had he known that the firearm was unloaded, it is quite clear that the evidence in total was sufficient to sustain Judge Hull's holding that the defendant had not met his burden of proving that it was clearly improbable that the firearm was possessed in connection with the offense. This is especially true in view of the obvious substantial weight which Judge Hull gave to the proximity between the firearm and the drugs (as well as the drug paraphernalia and scales used for weighing of marijuana).

**<u>Safety Valve</u>**

As indicated earlier, Highsmith was subject to a five year mandatory prison sentence pursuant to 21 U.S.C. § 841(b)(1)(B) for 100 or more marijuana plants. The court had to apply the mandatory minimum unless all five factors in the "safety valve" provision of 18 U.S.C. § 3553(f) applied. Because the § 2D1.1(b)(1) enhancement applied, Judge Hull determined that petitioner could not meet the second requirement for safety valve treatment, that is that "the defendant did not . . . possess a firearm or other dangerous weapon . . . in connection with

---

[3] Just as Judge Hull pointed out, it is quite possible that the firearm had a dual purpose, that of protecting Highsmith's wife and protection of Highsmith's drug trafficking operation.

the offense."  Relying upon *United States v. Stewart*, 306 F. 3d 295 (6th Cir. 2002),

the Sixth Circuit held, in deciding Highsmith's direct appeal, that where actual or

constructive possession of a firearm warrants an increase to the defendant's base

offense level under § 2D1.1, such possession defeats application of the safety

valve.  *Highsmith*, 60 Fed. Appx. at 519.

Highsmith, relying on *United States v. Bolka*, 355 F. 3d 909 (6th Cir.

2004), decided long after his prior conviction and sentence had become final, now

argues that a sentence enhancement under § 2D1.1(b)(1) does "not necessarily

preclude the application of a "safety valve" . . . reduction" under § 5C1.2(a).

Highsmith's argument in this respect fails for several reasons.  First of all, the

*Bolka*  decision, even if controlling, is not retroactive in application and would

have no impact upon petitioner's case.  Secondly, however, the holding of the

*Bolka*  case has now been rejected by a subsequent Sixth Circuit panel in *United*

*States v. Patterson*, 145 Fed. Appx. 988 (6th Cir. 2005). [4]  Thus, it appears that

under the law applicable at the time of Highsmith's direct appeal and the law

currently applicable in the Sixth Circuit, application of a sentence enhancement

---

[4]   In *Patterson*, the Sixth Circuit concluded that "[t]he *Bolka* court's conclusion is not supported
by the Sentencing Guidelines or the language in *Johnson*.  [*U.S. v. Johnson*, 344 F. 3d 562 (6th Cir. 2003)
(holding that the firearm enhancement precludes the application of the safety valve)].  When, as here, a
defendant cannot rebut the presumption that he possessed a firearm during the commission of an offense
by showing that it was clearly improbable that the weapon was connected to the offense, then that
defendant is ineligible for 'safety valve' status."  *Patterson*, 145 Fed. Appx. at 993.

under § 2D1.1(b)(1) does preclude application of the safety valve.

VII. **Conclusion**

For the reasons set forth above, the Court holds petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States and his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED**.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F. 3d 466 (6th Cir. 2001). The District Court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standard set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595 (2000). *Id.*

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Having examined each of the petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists

could not find that this Court's dismissal of petitioner's claims was debatable or wrong.   Therefore, the Court will deny petitioner a certificate of appealability.

A separate order will enter.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE